# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KISMET ACQUISITION, LLC , <br><br> Plaintiff, <br> vs. <br><br> JERRY L. ICENHOWER, et al., <br><br> Defendant. | CASE NO. 08cv1446 BTM (BLM), consolidated with 08cv1572 <br> CASE NO. 08cv2326 BTM (BLM), consolidated with 08cv2329, 08cv2409, 08cv2410, 09cv329, 09cv330, 09cv331, 09cv332, 09cv432, 09cv457 <br><br> **ORDER DENYING MOTION TO DISMISS APPEALS** |

Defendants-Appellants Alejandro Diaz-Barba and Martha Barba (the "Diaz Family") have appealed a judgment of the bankruptcy court, as well as orders of the bankruptcy court finding them in civil contempt and assessing monetary sanctions pursuant to the contempt orders. Plaintiff-Appellee Kismet Acquisition, LLC ("Kismet") moves the Court to dismiss Defendants-Appellants' appeals and assess further sanctions for bringing frivolous appeals. For the reasons set forth below, the Court **DENIES** Plaintiff-Appellee's Motion to Dismiss and Request for Sanctions.

## I. BACKGROUND

A. Background Facts

In or about 1995, D. Donald Lonie and the Lonie Family Trust (the "Lonies") sold a

leasehold interest[1] in a piece of real property, the Villa Vista Hermosa (the "Villa Property"), to Jerry and Donna Icenhower (the "Icenhowers" or "Debtors"). (Pl.-Appellee's Mem. P. & A., Ex. B. at 20–21.)

On March 24, 2000, the Lonies commenced an action against the Icenhowers in the United States District Court for the Southern District of California seeking a determination of their rights and interests in the Villa Property and injunctive relief. (Id. at 21.)

On March 4, 2002, the Icenhowers transferred their interest in the Villa Property to Howell & Gardner ("H&G"), a Nevada corporation. (Id. at 24.) On September 2, 2002, this transfer was recorded in the Mexican Registry. (Id. at 25.)

On November 24, 2003, the district court entered judgment in favor of the Lonies. The district court directed the Icenhowers to either: (1) pay damages in the amount of $1,356,830.32 and reregister a lien on the Villa Property as security for the damages until paid by a date certain; or (2) reconvey the Villa Property to the Lonies, free of any encumberance, claim, lien, or liabilities placed on the Property as a result of the Icenhowers' actions or inactions. (Id. at 21–22.)

Martha Barba and her son, Alejandro Diaz-Barba, (the "Diaz Family"), are citizens of Mexico and residents of San Diego County, California. (Id. at 25.) Mr. Diaz first met Mr. Icenhower during the summer of 2003. (Id. at 26.)

In late 2003 and early 2004, Mr. Icenhower and Mr. Diaz began discussing the possible sale of the Villa Property from H&G to Mr. Diaz. (Id.) At some point during this time period, they agreed upon a purchase price and Mr. Diaz began conducting due diligence. (Id.) While Mr. Diaz was conducting due diligence, Mr. Icenhower asked Mr. Diaz for a personal loan of $100,000, which Mr. Diaz agreed to. (Id.)

On June 7, 2004, H&G and the Diaz Family executed a formal purchase agreement

---

[1] Because the Lonies and the Icenhowers are not Mexican nationals, their interest in the Mexican property was secured by a *fideocomiso* trust rather than a deed of trust.

for the Villa Property. (Id. at 28.)[2]

B. Bankruptcy Case

On December 15, 2003, the Icenhowers filed for bankruptcy protection. (Id. at 22.)

On August 23, 2004, the Trustee of the bankruptcy estate commenced a fraudulent transfer action against H&G to recover the Icenhowers' transfer of the Villa Property to H&G ("Fraudulent Transfer Action"). (Id. at 30.)

In or about February, 2005, the Trustee learned that H&G had subsequently transferred the Villa Property to the Diaz Family. (Id.) The Trustee then amended his complaint to add the Diaz Family as Defendants in the Fraudulent Transfer Action. (Id.)

On August 3, 2006, the Trustee also filed a second, alternative action against H&G, seeking to determine that H&G was the Icenhowers' alter ego and/or for substantive consolidation of the Icenhowers and H&G *nunc pro tunc* to the petition date, and to avoid and recover the postpetition transfer of the Villa Property ("Alter Ego Action"). (Id. at 31.)

On July 5, 2006, Kismet filed a Notice of Transfer with the bankruptcy court, indicating that it had purchased the Lonies' claims against the estate. (Id.) Kismet is a limited partnership formed by non-Mexican nationals to develop real estate projects in Mexico. (Pl.-Appellee's RJN, Ex. 1 at 5.)

Kismet then negotiated with the Trustee to purchase all of the estate's assets, including assignment of the Fraudulent Transfer and Alter Ego Actions, in exchange for payment of an amount sufficient to pay all the creditors in full except its own claims, which Kismet voluntarily subordinated. (Pl.-Appellee's Mem. P. & A., Ex. B at 31.) On December 7, 2006, the bankruptcy court entered an order approving an Asset Purchase Agreement allowing Kismet to be substituted in for the Trustee as the real party-in-interest. (Id. at 31–32.) Kismet remains the only creditor to be paid by the estate. (Id. at 32.)

---

[2] Because Defendants-Appellants are Mexican nationals, they obtained legal title to the property as opposed to an assignment of the *fideocomiso* trust held by H&G.

1. Appeal 1 (08cv1446 and 08cv1572)

The bankruptcy judge subsequently consolidated the Fraudulent Transfer Action and the Alter Ego Action (together, the "Avoidance Actions") and issued a decision on June 2, 2008. (Id. at 9.) The bankruptcy court issued two alternative rulings. First, the Bankruptcy Court found that H&G was the alter ego of the Icenhowers. (Id. at 10.) As a result, even though the Icenhowers transferred the Villa Property to H&G prior to the bankruptcy petition, the Property remained a part of the Icenhowers' bankruptcy estate at the time Mr. Icenhower filed his petition. (Id.) The Court therefore ruled that the subsequent transfer of the Villa to the Diaz family was avoidable as an unauthorized post-petition transfer. (Id.)

Alternatively, the bankruptcy court ruled that even if the Villa Property was not a part of the bankruptcy estate at the time that Mr. Icenhower filed his petition, the transfer from the Icenhowers to H&G was avoidable as a fraudulent transfer and, therefore, recoverable from the Diaz family, the "immediate or mediate" transferee. (Id. at 11.)

Accordingly, the bankruptcy court ruled that Kismet was entitled to recover the Villa Property. (Id.) The bankruptcy court ordered the Diaz family to take all actions necessary to undo the avoided transfer and to reconvey the property to a *fideicomiso* trust for the benefit of Kismet. (Id.) The bankruptcy court also provided for the alternative of a money judgment in favor of Kismet at Kismet's sole option. (Id. at 12.) In connection with its June 2, 2008 decision, the bankruptcy court issued a "Consolidated Judgment" (Id. at 9–12), summarizing its order, and "Consolidated Findings of Fact and Conclusions of Law" (Id. at 19–51), entering its findings of fact and explaining the legal reasoning behind its order.

On July 29, 2008, the bankruptcy court filed an order granting in part and denying in part Defendants-Appellants' Motion to Amend the Consolidated Judgment. (Id. at 53–54.) In connection with its order, the bankruptcy court also issued an "Amended Consolidated Judgment" ("ACJ"). (Id. at 56–59.) The ACJ clarified that the transfer or sale of the Villa Property to Kismet actually referred to the transfer or sale of the beneficial interest in a *fideicomiso* bank trust formed to hold title to the Villa Property, since Kismet is not a Mexican national entitled to hold title to coastal real property under Mexican law. (Id. at 62.)

Additionally, the ACJ affirmed that the preliminary injunction entered in the Avoidance Actions would continue in effect until the Diaz Family fully complied with the ACJ. (Pl.-Appellee's RJN, Ex. 1 at 6.) The ACJ also directed Defendants to take actions to transfer or reconvey the property within *ten* days, rather than *thirty* days, as set out in the Consolidated Judgment.[3] (Pl.-Appellee's Mem. P. & A., Ex. B. at 63.)

On August 6, 2008, Defendants-Appellants filed **Appeal 1**. Appeal 1 appeals the bankruptcy court's decision on the merits as reflected in (1) the Consolidated Judgment, (2) the Consolidated Findings of Fact and Conclusions of Law, and (3) the ACJ.

On September 3, 2008, this Court denied Defendants-Appellants' motion to stay the enforcement of the bankruptcy court's judgment pending appeal. Thus, the Diaz Family had ten days following this Court's order to take all actions necessary to transfer or reconvey the Villa Property to Kismet. (Pl.-Appellee's RJN, Ex. 1 at 7.)

On October 15, 2008, Kismet filed a Motion for Order Compelling Production of Documents and Deposition Testimony under FRCP 37(a)(4) and (b)(2) and Awarding Sanctions and Expenses under FRCP 37(a)(4) and (b)(2) ("Motion to Compel"). (Pl.-Appellee's RJN, Ex. 10–11.)

On October 22, 2008, the bankruptcy court held a hearing on Kismet's Motion to Compel. The bankruptcy court granted Kismet's Motion to Compel, with some limitations, in a minute order, which was later entered on the docket on November 3, 2008. (Defs.-Appellants' RJN, Ex. 6.) The court ordered the Diaz Family to produce all non-privileged documents responsive to an earlier discovery order, and to prepare a privilege log. (Id.) The bankruptcy court also found that the Diaz Family waived their attorney-client privilege in relation to producing documents responsive to the discovery request. (Id.) Finally, the court granted Kismet's requests for fees and costs in connection with bringing the Motion to

---

[3] The Diaz Family disputes the existence of an "Amended Consolidated Judgment." The "Amended Consolidated Judgment" referred to by the bankruptcy court and Kismet simply points to the Consolidated Judgment as revised by the bankruptcy court in its July 29, 2008 order granting in part Kismet's Motion to Alter or Amend the Consolidated Judgment. (Pl.-Appellee's Mem. P. & A., Ex. B. at 55–59.) This Court's references to the "Amended Consolidated Judgment" or "ACJ" are references to the bankruptcy court's July 29, 2008 order, setting forth the revised Consolidated Judgment.

Compel. (Id.) The court ordered Kismet to file a declaration regarding the amount of fees attributable to the Motion to Compel by November 3, 2008. (Id.)

On October 30, 2008, Kismet filed an Emergency Ex Parte Application Requesting Assistance of Court in Connection with Compliance with the Minute Order by the Diaz Family and for Sanctions ("Ex Parte Minute Order Compliance Application"). (Pl.-Appellee's RJN, Ex. 9.)

### 2. Appeal 2 (08cv2326 and 08cv2329)

The Diaz Family subsequently failed to comply with the ACJ. As a result, the bankruptcy court ordered the Diaz Family to show cause why they should not be held in contempt and sanctioned for failure to comply with the ACJ. (Pl.-Appellee's Mem. P. & A., Ex. C at 86.) On November 13, 2008, the bankruptcy court held a hearing on this order to show cause. (Id.) On December 2, 2008, the bankruptcy court issued a written order finding the Diaz Family in contempt of the ACJ. (Id.) The bankruptcy court further assessed compensatory and compulsory damages against the Diaz Family. (Id.) On December 4, 2008, the bankruptcy court amended its December 2, 2008 order changing some dates in the earlier order and deleting a portion of the order expanding the order to show cause to include the Diaz Family's counsel. (Id. At 89–91.)

On December 15, 2008, the Diaz Family filed **Appeal 2** (Pl.-Appellee's Mem. P. & A., Ex. C). In Appeal 2, Defendants-Appellants appeal the bankruptcy court's December 2 and December 4, 2008 orders finding them in contempt of the ACJ and ordering them to pay compensatory and compulsory damages.

### 3. Appeal 3 (08cv2409 and 08cv2410)

On December 17, 2008, the bankruptcy court issued an order awarding fees and expenses to Kismet pursuant to an earlier order granting an application by Kismet requesting assistance of the court in connection with securing the Diaz Family's compliance with the requirements of a minute order issued by the bankruptcy court on November 3, 2008. (Pl.-

Appellee's Mem. P. & A., Ex. D at 98–99.)  The November 3, 2008 minute order had granted Kismet's Motion to Compel Production of Documents and Deposition Testimony from Alejandro Diaz-Barba under FRCP 37(a)(3)(B) and Awarding Sanctions and Expenses under FRCP 37(4) and (b)(2).  (Defs.-Appellants' RJN, Ex. 7.)

On December 18, 2008, the bankruptcy court issued an order awarding fees and expenses to Kismet pursuant to a November 13, 2008 order to show cause hearing.  (Pl.-Appellee's Mem. P. & A., Ex. D at 100–101.)

On December 30, 2008, the Diaz Family filed **Appeal 3**  (Pl.-Appellee's Mem. P. & A., Ex. D.)   In Appeal 3, Defendants-Appellants appeal the bankruptcy court's December 17 and December 18, 2008 orders awarding fees and expenses to Kismet.

4.  <u>Appeal 4 (09cv329 and 09cv330)</u>

On January 7, 2009, the bankruptcy court issued three orders.  First, the court filed an order on the order to show cause hearing continued from November 13, 2008 to December 4, 2008.  (Pl.-Appellee's Mem. P. & A., Ex. E at 111–112.) The court found that the Diaz Family continued to be in contempt of court and assessed further compensatory and compulsory damages against them.  (<u>Id.</u>)

Second, the bankruptcy court issued an order granting in part and denying in part Kismet's application for a preliminary injunction.  (<u>Id.</u> at 114–115.)  The bankruptcy court continued the preliminary injunction until the Diaz Family performed the ACJ.  (<u>Id.</u>)  The bankruptcy court also denied the application insofar as it asked the court to find that the Defendants violated the preliminary injunction and were in contempt.  (<u>Id.</u>)

Third, the bankruptcy court issued an order denying Kismet's application for a permanent anti-suit injunction.  (<u>Id.</u> at 117–118.) The court entered a memorandum decision together with this order.  (<u>Id.</u>)

On February 19, 2009, Defendants-Appellants filed **Appeal 4** (Pl.-Appellee's Mem. P. & A. Ex. E). In Appeal 4, Defendants-Appellants appeal the bankruptcy court's three January 7, 2009 orders. Specifically, the Diaz Family challenge the bankruptcy court's (1) finding that

they were in continued contempt of the ACJ until December 4, 2008, (2) continuation of the preliminary injunction, and (3) factual findings set forth in the memorandum decision accompanying the order denying Kismet's application for a permanent anti-suit injunction.

5. Appeal 5 (09cv331 and 09cv332)

On February 3, 2009, the bankruptcy court issued an order awarding fees and expenses to Kismet pursuant to its finding at a hearing on December 11, 2008 that the Diaz Family were in continued contempt of the preliminary injunction. (Pl.-Appellee's Mem. P. & A., Ex. F at 127–129.)

On February 19, 2009, Defendants-Appellants filed **Appeal 5** (Pl.-Appellee's Mem. P. & A., Ex. F.)  In Appeal 5, Defendants-Appellants appeal the bankruptcy court's February 3, 2009 award of fees and expenses pursuant to its finding that the Diaz Family continued to be in contempt of the preliminary injunction.

6. Appeal 6 (09cv432 and 09cv457)

On February 25, 2009, the bankruptcy court found that the Diaz Family did not turn over possession of the Villa Property until November 25, 2008. (Pl.-Appellee's Mem. P. & A., Ex. G at 138.)  The court further determined that the Diaz Family purged their contempt on December 5, 2008. (Id.)  As a result, the bankruptcy court issued compulsory sanctions from November 26, 2008 through December 5, 2008, compensatory sanctions, attorney's fees and expenses, and an amount reasonably necessary to restore a removed anchor to its base on the Property. (Id. at 138–139.)

On March 4, 2009, Defendants-Appellants filed **Appeal 6**  (Pl.-Appellee's Mem. P. & A., Ex. G).  In Appeal 6, Defendants-Appellants appeal the bankruptcy court's February 25, 2009 order.

### III. DISCUSSION

On March 6, 2009, Plaintiff-Appellee filed the instant Motion to Dismiss.  Kismet argues

that the Court should dismiss Appeal 1 for two alternative reasons. Kismet contends that Appeal 1 is moot, or, alternatively, that the Diaz Family has failed to prosecute Appeal 1. Kismet also urges the Court to dismiss Appeals 2–6 because the Diaz Family has complied with the orders underlying the appeals, purging their contempt and rendering the appeals moot. Finally, Kismet moves the Court to assess sanctions against the Diaz Family for bringing these allegedly frivolous appeals.

A. Appeal 1

First, Plaintiff-Appellee claims that the Court should dismiss Appeal 1 as moot. Second, Plaintiff-Appellee argues for Appeal 1's dismissal based on Defendants-Appellants' failure to prosecute. The Court concludes that Appeal 1 is not subject to dismissal.

    1. Mootness

Kismet asserts that, in reliance on the bankruptcy court's judgment, it transferred the Villa Property to a third party, Axolotl. Kismet further contends that Axolotl's status as a third party purchaser not a party to the bankruptcy court action renders the appeal moot.

"When, pending an appeal from the judgment of a lower court, and without any fault of the [appellee], an event occurs which renders it impossible for this court, if it should decide the case in favor of the [appellant], to grant him any effectual relief whatever, the court will not proceed to a judgment, but will dismiss the appeal." Mills v. Green, 159 U.S. 651, 653 (1985). "The party asserting mootness has the heavy burden of establishing that there is no effective relief remaining for a court to provide." GATX/Airlog Co. v. United States Dist. Court for the Northern Dist. Of Cal., 192 F.3d 1304, 1306 (9th Cir. 1999).

Kismet argues that the Diaz Family's failure to obtain a stay of the transfer of the Villa Property mooted their appeal of the ACJ. Generally, where a trustee transfers property to a third party pursuant to a bankruptcy court order, the failure of the party challenging the transfer to obtain a stay of the order pending appeal will render the appeal moot. In re Royal Properties, Inc., 621 F.2d 984, 986–987 (9th Cir. 1980). A party who chooses to continue an

appeal absent a stay pending appeal "risks losing its ability to realize the benefit of a successful appeal." Matter of Combined Metals Reduction Co., 557 F.2d 179, 188 (9th Cir. 1977) (quoting In re Lewis Jones, Inc., 369 F. Supp. 111, 116 (E.D. Pa. 1973). Moreover, a party's request for a stay does not prevent its claims from becoming moot when, in fact, no stay was ordered. In Re National Mass Media Telecommunication Systems, Inc., 152 F.3d 1178, 1181 (9th Cir. 1998).

Here, the bankruptcy court approved an Asset Purchase Agreement between the Trustee and Kismet, substituting Kismet in for the Trustee as the real party-in-interest. (Pl.-Appellee's RJN, Ex. 1 at 5.)  The bankruptcy court also found that the Asset Purchase Agreement permitted Kismet's assignment to Axolotl of the Villa Property transfer. (Pl.-Appellee's Mem. P. & A., Ex. C at 86.)  Axolotl is not a party to this proceeding. Kismet argues, therefore, that the Court cannot grant any effective relief against Axolotl, and Appeal 1 is moot.

The Diaz Family counters that the Court may order a reconveyance of the Villa Property because Kismet and Axolotl are under "common control."  The Diaz Family alleges, and Kismet does not dispute, that Wolfgang Hahn, an individual, owns a majority share of both Kismet and Axolotl.  However, it is "well settled law that the organization of one company by another, or the ownership of all the stock of one company by another, or common officers and directors, or all these elements combined, are not sufficient to defeat separate corporate entity."  Gillis v. Jenkins Petroleum Process Co., 84 F.2d 74, 79–80 (9th Cir. 1936). Nonetheless, each case raising the issue of corporate separateness must be evaluated on its own facts. Edwin K. Williams & Co., Inc. V. Edwin K. Williams & Co.-East, 542 F.2d 1053, 1063 (9th Cir. 1976).

Here, the bankruptcy court did not develop the issue of whether Axolotl and Kismet constitute separate corporate entities or, on the other hand, are mere alter egos of one another or of Hahn.  If Defendants-Appellants prevail on their appeal and this Court remands the case for further relief, they will have the opportunity to prove to the bankruptcy court that Axolotl is a mere instrumentality of Kismet, or that both organizations are the alter egos of

Hahn. The bankruptcy court could determine, on remand, that Axolotl's corporate form should be disregarded. It would then possess the authority to order a reconveyance of the Villa Property from Axolotl to the Diaz Family.

Additionally, the Diaz Family argues that Appeal 1 is not moot because the Court can grant effective relief in the form of money damages. Kismet cites no legal authority to support its argument that, should the Diaz Family prevail on the merits of Appeal 1, the Family could not make a claim for restitution against the bankruptcy estate. Therefore, at this stage, the Court cannot find that it would be impossible to grant effective relief in the form of money damages. Cf. In re Robert L. Helms Construction and Development Co., Inc., 139 F.3d 702, 704 (9th Cir. 1998) (finding that bankruptcy appeal was not moot although property in which appellant held an option had been sold free and clear of the option to a third party, since, if successful on appeal, appellant could seek still damages against the bankruptcy estate).

Because the record on the alter ego issue was not fully developed below, and the Diaz Family may have a claim for restitution, the Court finds that it would be possible to fashion effective relief should Defendants-Appellants prevail on their appeal. Kismet has not met its high burden to show that the Court should dismiss Appeal 1 as moot.

### 2. Failure to Prosecute

Plaintiff-Appellee alternatively argues that the Court should dismiss Appeal 1 for failure to prosecute. Federal Rule of Bankruptcy Procedure 8006 requires an appellant to file with the bankruptcy court clerk and serve on the appellee a designation of the items to be included in the record on appeal and a statement of the issues to be presented within ten days after filing the notice of appeal. Defendants-Appellants allege that they timely designated items to be included in the record and intended for the clerk to prepare a copy of the designated items at their expense pursuant to Rule 8006. (See generally Pl.-Appellee's Mem. P. & A., Ex. B.) No evidence suggests that the Diaz Family failed to post the costs associated with preparing a copy of the designated items.

It appears, however, that the designated record on appeal was not transmitted from

the bankruptcy court until March 16, 2009, over seven months after the Diaz Family filed their Notice of Appeal. The record does not make clear the reason for the delay between the designation of the record and transmittal of appeal. Nonetheless, the Court finds that this delay does not warrant dismissal. In In re Fitzsimmons, 920 F.2d 1468 (9th Cir. 1990), the Ninth Circuit Court of Appeals outlined factors district courts should consider when assessing whether dismissal is an appropriate sanction for non-compliance with Rule 8006. Generally, a district court must consider the relative fault of the attorney and the client in failing to comply with Rule 8006, as well as alternative sanctions to dismissal. Id. at 1472. A district court may only dismiss a case for noncompliance with procedural rules without explicit consideration of alternative sanctions and relative fault in "egregious circumstances." Id. at 1473. The existence of bad faith may constitute egregious circumstances warranting dismissal even without the explicit consideration of alternative sanctions and relative fault. Id. at 1474.

Here, Kismet points only to the Diaz Family's delay as evidence of bad faith. The Diaz Family asserts, however, that the delay in transmitting the record was unintentional and not a result of bad faith. While Kismet correctly points out that a continuing pattern of behavior that is part of a scheme of delay and misuse of judicial resources may be considered by a court in finding bad faith and assessing sanctions, see Chambers v. NASCO, Inc., 501 U.S. 32, 56–57 (1991), they fail to adequately show that such behavior took place here. The bankruptcy court's contempt and sanction orders do not alone demonstrate a scheme of delay or abuse continuing with Defendants-Appellants' non-compliance with Rule 8006. Moreover, Kismet does not address relative fault or alternative sanctions in its motion to dismiss.

Based upon the record before it, the Court cannot conclusively find that dismissal is an appropriate sanction for the delay in transmitting the record. One purpose of requiring district courts to consider alternative sanctions and relative fault in evaluating a motion to dismiss for noncompliance with procedural rules is to meet the "desire that the district court create a record from which an appellate court could determine why dismissal was entered." In re Fitzsimmons, 920 F.2d at 1473. The record here insufficiently shows that the Defendants-Appellants acted in bad faith by delaying to transmit the record, and does not

reveal the relative fault of the Defendants and their attorneys. Indeed, the record does not indicate definitely that the delay was solely the fault of the Diaz Family. Thus, the Court declines to dismiss Appeal 1 for failure to prosecute.

The Court, therefore, **DENIES** Plaintiff-Appellee's Motion to Dismiss as it applies to Appeal 1.

B. Appeals 2–6

Plaintiff-Appellee also contends that the Court should dismiss Appeals 2–6 as moot. In Appeals 2 and 3, the Diaz Family appeals the bankruptcy court's (1) order finding them in contempt of the ACJ (Appeal 2) and (2) order assessing sanctions pursuant to this contempt order and quantifying discovery sanctions pursuant to an earlier order (Appeal 3). In Appeals 4 and 5, the Diaz Family appeals the bankruptcy court's (1) order finding them in continued contempt of the ACJ (Appeal 4) and (2) order assessing sanctions pursuant to this contempt order (Appeal 5). In Appeal 6, the Diaz Family appeals the bankruptcy court's order assessing sanctions, fees, and expenses up to the date on which they purged their contempt by transferring the Villa Property. Thus, Appeals 2-6 all challenge either orders finding Defendants-Appellants in civil contempt or orders assessing sanctions, fees, and expenses pursuant to those contempt orders. Kismet, however, argues that because Defendants-Appellants purged their contempt with regard to the various orders, their appeals are moot.

Once a finding of contempt has been made and a sanction imposed, a contempt order has acquired all the "elements of operativeness and consequence necessary to be possessed by any judicial order to enable it to have the status of a final decision." Shuffler v. Heritage Bank, 720 F.2d 1141, 1145 (9th Cir. 1983) (quoting S.E.C. v. Naftalin, 460 F.2d 471, 475 (8th Cir. 1972)). Ordinarily, the purging of contempt renders an appeal of a contempt order moot. S.E.C. v. Hickey, 322 F.3d 1123, 1128 (9th Cir. 2003). Furthermore, contempt proceedings "[do] not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed and thus become a retrial of the original controversy." Maggio v. Zeitz, 333 U.S. 56, 69 (1948).

Defendants-Appellants do not dispute that they complied with the bankruptcy court's underlying orders and purged their contempt. The Diaz Family transferred the Villa Property on November 25, 2008, (Gertz Decl. ¶ 3), and the bankruptcy court held that Defendants purged their contempt finally on December 5, 2008 (Pl.-Appellee's Mem. P. & A., Ex. G at 138). Thus, the Diaz Family completely purged their contempt relating to the orders appealed in Appeals 2 and 4. Additionally, the Diaz Family agrees that they produced the discovery leading to the sanctions quantified in Appeal 3. (See Pl.-Appellee's RJN, Ex. 7.) Nonetheless, Defendants remain liable for the damages and fees imposed in Appeals 2 and 4 and quantified in Appeals 3, 5, and 6. Even where a party has purged its contempt, a contempt order continues to be a live controversy if that party remains liable for sanctions imposed under the order. Shuffler v. Heritage Bank, 720 F.2d 1141, 1145 (9th Cir. 1983).

Plaintiff-Appellee argues that Defendants-Appellants may not appeal the orders finding them in contempt of the post judgment discovery orders (Appeal 2)[4] and quantifying discovery sanctions (Appeal 3) because they failed to appeal the underlying orders commanding the discovery. It remains unsettled in the Ninth Circuit whether an order generally granting post-judgment discovery is appealable prior to the issuance of a contempt order for failure to comply with the discovery order. See Richmark Corp. v. Timber Falling Consultants, et al., 959 F.2d 1468, 1471 n. 1 (9th Cir. 1992) (declining to decide whether district court order compelling post-judgment discovery or district order finding defendant in contempt for failure to comply with post-judgment discovery order was appealable; since defendant timely appealed both orders, court could exercise jurisdiction). Regardless, Defendants-Appellants' failure to appeal the underlying discovery orders and their production of the propounded discovery do not

---

[4] The Diaz Family asserts that the bankruptcy court's orders on December 2 and December 4, 2008 found them in contempt of both the ACJ and the discovery orders issued on October 22, 2008 and November 3, 2008. The Court notes, however, that the December 2 and December 4, 2008 orders do not specifically find the Diaz Family in contempt of the discovery orders. Rather, the December 2 and December 4, 2008 orders appear only to reference the ACJ, stating "the Court finds clear and convincing evidence of the Diaz Family's contempt of the Court's Amended Consolidated Judgment," and orders damages. Nonetheless, because both Plaintiff-Appellee and Defendants-Appellants appear to agree that the December 2 and December 4, 2008 orders found them in contempt of the discovery orders, the Court assumes so for the purpose of this motion to dismiss.

render Appeals 2 and 3 moot because they remain liable for the sanctions issued by the bankruptcy court to penalize their noncompliance. See Shuffler, 720 F.2d at 1145. Thus, this Court retains jurisdiction over a live controversy.

The Court, therefore, **DENIES** Plaintiff-Appellee's Motion to Dismiss as it applies to Appeals 2-6.

C. Sanctions

Plaintiff-Appellee also requests that the Court issue an award of sanctions against Defendants-Appellants for bringing frivolous appeals. Because the Court denies the instant Motion to Dismiss and finds that Defendants-Appellants' appeals are not frivolous, the Court accordingly **DENIES** Plaintiff-Appellee's request for sanctions.

### III. CONCLUSION

For the reasons explained above, the Court hereby **DENIES** Plaintiff-Appellee's Motion to Dismiss the Appeals of Defendants-Appellants and Request for Sanctions for Frivolous Appeals in its entirety.

DATED: August 18, 2009

*Barry Ted Moskowitz*

Honorable Barry Ted Moskowitz
United States District Judge